CHEHARDY, Judge.
Plaintiffs, Jewel and John Buckel, appealed a trial court judgment dismissing their suit for general and special damages allegedly sustained by Mrs. Buckel and the Buckel community, respectively, as a result of an ankle twisting incident on the escalator of Maison Blanche department store. Named defendants were Maison Blanche Corporation, its public liability insurer, Travelers Insurance Company, and the escalator manufacturer, Otis Elevator Company.
On January 10, 1980, this court rendered an opinion, 379 So.2d 849 (La.App.) affirming the judgment of the trial court. Plaintiffs petitioned for a rehearing urging Marquez v. City Stores Co., 371 So.2d 810 (La.1979), “as clearly applicable to this case.” We did not agree and refused to grant a rehearing.
Plaintiffs then applied to the Supreme Court for a writ of certiorari or review, which was granted on April 8, 1980. 385 *1386 So.2d 782 (La.). The Supreme Court ordered the judgment of January 10, 1980 vacated and remanded the case to the Court of Appeal for reconsideration in light of Marquez v. City Stores Co., supra.
The petition of Mrs. Buckel alleges these facts:
“One of the shoes worn by petitioner, Jewel Buckel, jammed in the escalator causing petitioner to fall and violently strike the floor with the resulting injuries herein sued upon.” (Emphasis ours.)
However, the testimony belies this allegation. For example, we note the following response of Mrs. Buckel on cross-examination:
“Q Oh, I see. Now, did any part of your shoe get jammed in the escalator to your knowledge?
A I don’t know.
Q The reason why I ask you that, you say and I think your attorney prepared the petition, I just want to know, and I imagine he got the information from you, he says in Paragraph 3, one of the shoes worn by you jammed in the escalator causing you to fall and violently strike the floor with resulting injuries, well, now, you can’t tell me that it got jammed, can you, your shoe?
A I know that I didn’t hit my knee.
Q Let’s take one thing at a time. It didn’t get jammed into anything on the escalator, did it?
A It did — if it was jammed, it would have stayed in the escalator.
Q So your answer is, it did not get jammed?
A No, because it caught on to something on the escalator.
Q And you did not fall as it said in Paragraph 3, did you?
A No, I didn’t fall.
Q You didn’t violently strike the floor, did you?
A No.
Q Right before this happened, or at the time it happened or immediately af-terwards, did the escalator come to a stop?
A No.
Q Did the escalator jerk immediately before or at any time when this happened?
A No, I don’t remember it.
Q Or immediately after?
A I don’t — no, I don’t remember it jerking at all.
Q Did it feel like it bumped at the time right before it happened?
A No.
Q Did it do anything unusual at the time that this accident happened?
A As far as I can remember, I would say no * * *
The record rules out any malfunctioning of the escalator or unusual happening that could account for the sudden “attack” on the heel of plaintiff’s left shoe and injury to her ankle. Although such malfunctioning need not be proven in view of Marquez v. City Stores Co., supra, it is a factor in determining whether plaintiff’s encounter was with the escalator or some outside force. Had plaintiff established a sudden movement, a jerk or an unusual happening on the escalator, it could have followed that some neighboring passenger was caused to step on her heel and consequently the escalator could have been the cause of plaintiff’s injuries.
But Mrs. Buckel did testify that the escalator was crowded. On cross-examination she continued:
“Q Now, you said something a little while ago that interests me. You said that I felt something pull on my heel, I couldn’t look down to see. Something to the effect that this escalator was crowded?
A It was crowded.
*1387 Q You couldn’t look down from where you were standing and look at your foot?
A Well, it happened so quickly, there was people in the front and people all over, it no sooner happened and I was almost at the top and off.
Q In other words, this happened and then there was about what, two or three or four steps to the top? From the time that it happened?
A From the time it happened I would say maybe there was three steps from the top.

Q You didn’t look down at your foot?
A I couldn’t, there was too many people around, I just wanted to get off the escalator.
Q Let’s talk about that. Was there someone directly behind you?
A Well, I don’t know about directly behind me, I know there was a man in back of me.
Q Was there somebody right in front of you?
A Yes, there was.
Q Was there just one person behind you, a man or was there more?
A I don’t know how many people.” (Emphasis ours.)
And in response to questioning from her counsel, Mrs. Buckel stated:
“A Well, I got on the escalator and it was really crowded, and I was holding on both rails * * * I felt something, I felt my heel, my heel felt like something grabbed ahold of it or something pulling, and my ankle turned, it happened so fast there was a man in back of me, my knee buckled under me, I was going down and he gave me a hand and stopped me from falling and then I was already up on the second floor and my shoe was off.
Q Okay. You indicated that you were holding on, is that correct?
A Yes.
Q With — how many rails are there on the escalator to hold on to?
A Two.
Q Were you holding on to both of them?
A At that particular time I was holding on to both of them.
Q Do you recall the approximate position of your feet on the step of the escalator?
A Well, positively, I mean I would say maybe, it would be the middle, but I am not really sure because this happened so quickly that it just — .” (Emphasis ours.)
From plaintiff’s own testimony these facts are established:
1. The escalator was crowded with people in front and to the rear of Mrs. Buckel.
2. There apparently was no malfunctioning of the escalator.
3. Plaintiff was standing in the center of the escalator holding on with both hands and obviously facing forward.
4. She was three steps from the second floor when incident occurred.
5. Something or someone “attacked” her heel.
6. Although her knees buckled, she did not fall because of the assist of an unknown man behind her.
7. Within seconds of the accident she was off the escalator with her left shoe hanging on her foot.
8. The shoe did not jam in the escalator.
An examination of plaintiff’s left shoe, allegedly damaged in the escalator incident, discloses less than a one-inch linear scratch on the sole and slight abrasions on the front. It was and remains the opinion of this court that the position of Mrs. Buckel on the escalator, obviously facing forward, *1388 with one hand on each escalator rail, standing in the middle or slightly to the left of the middle, absolutely precludes the conclusion that somehow the escalator, at its left side, caught Mrs. Buckel’s shoe in the front tip and drew it into an opening between the steps and side rail less than one-half inch wide.
Plaintiff’s testimony establishes her as a person “respectful” of an escalator, who boarded defendant’s escalator on the first floor, positioned herself in a forward position, held on with one hand on each rail, and rode in this position on a crowded escalator to within three steps of the second floor. It is difficult for us to imagine how the escalator could have engaged the toe of her left shoe. This indicates that her foot somehow assumed a position perpendicular to her forward-facing body and thus enabled the machinery to grab the toe of plaintiff’s shoe with injury resulting to her heel. Plaintiff’s consistent testimony about the grabbing of her heel just does not give credence to the idea that the front of her shoe was caught in the side of the escalator.
On the contrary, it is much more reasonable to conclude that some rider on the escalator, perhaps the person who caught her, anxious to disembark “attacked” her heel with his foot — causing plaintiff to react in violent defense and thus possibly push her foot into the side of the escalator, if indeed the escalator did the slight damage to the shoe disclosed by an examination.
Even if we fully accept the testimony of plaintiff’s expert that the toe was caught in the escalator, the facts lead us to conclude that a man of weight accidentally bearing down on plaintiff’s heel could have caused plaintiff to react with enough violence to cause the heel of her shoe to partially separate from the shoe, exposing some of the nails.
To sum up, the plaintiff simply has not carried the burden of proving her accident was caused by the escalator.
Roger Harris, who worked for Otis Elevator Company for 28 years, qualified as an expert in the maintenance of escalators. After hearing the testimony of plaintiff, he testified that his theory of how the accident happened was quite different from plaintiff’s expert. The following testimony is the response of Harris on direct examination:
“Q Now, this man who was on the stand, Mr. Liebkemann, had a theory as to how the lady’s shoe came off. Do you have a theory after hearing her testimony?
A Yes, but, mine is quite different from his.
Q Would you tell us your theory?
A Well, from her testimony, there was an awful lot of people on the escalator and I feel that somebody stepped on her heel rather than her getting her toe caught.
Q Did you hear her testify — scratch that. You heard no testimony from her that her toe got caught in the escalator, did you?
A That’s right.”
Furthermore, this witness, on cross-examination, testified:
“Q From time to time, that space on one side to the other would be a little greater than the other side, as it moves on towards the top of its run, is that correct?
A It should never exceed a quarter of an inch with even the movement in it.”
And then, concerning plaintiff’s view of the incident, Harris stated:
“Q Counsel asked you something about the shoe getting caught, would it be probable that this shoe would get caught in the way counsel would have us believe that it got caught?
A No, sir.
Q With a foot in the shoe.
A No, sir.”
We conclude, once again, that the trial judge reached the proper conclusion in dis *1389 missing plaintiff’s claim and that the most logical explanation of what happened was expressed by Harris, who concluded that someone stepped on plaintiff’s heel.
Facing forward with both hands holding on and reasonably concluding that the toe of the shoe was facing forward, how could the toe of the shoe have lodged in the side of the escalator? Once again we note plaintiff’s testimony:
“Q When you made this report to whoever it was at Maison Blanche, do you remember what you told them?
A As far as — it’s been a long time, I remember telling — it was a lady — I don’t remember her name, but I told her about my heel at first got caught, something pulled and grabbed my heel on the step, that is what it felt like to me.
Q If she says that you said that you got your heel caught, would that be more than likely what you told her?
A Well, that is what it felt like to me, I don’t know if it got caught, it felt like something pulled it, grabbed my shoe.
THE COURT:
Mr. Drury.
CROSS EXAMINATION
BY MR. DRURY:
Q Mrs. Buckel, you said that you don’t know if your heel got caught. It felt like something grabbed my shoes, I think that is your exact words a moment ago?
A Yes.
Q What part of your shoe did you feel like was grabbed ?
A It felt like the heel, that is what it felt like.” (Emphasis ours.)
In Marquez v. City Stores Co., supra, plaintiff sued City Stores and others for injuries sustained by his 3/2-year-old child on a descending escalator, while standing on the same step as plaintiff and holding on to the rail. The child’s foot was caught in the side of the escalator between the moving stair tread and the adjacent panel of the escalator. The child was wearing relatively new and not excessively worn tennis shoes. The accident necessitated the surgical amputation of half of the child’s big toe, resulting in a 10% permanent loss of his foot. The court observed, “If this escalator were safe for small children with small feet, then James’ shoe could not have been caught in this opening.”
Our understanding of Marquez is that the act of actually getting one’s foot caught in an escalator is an occurrence sufficiently unusual to establish a defective escalator. Thus if the evidence would prove damages as a result of a rider’s foot being caught in the escalator, liability would ensue. Were we convinced that the evidence presented by plaintiff established that her foot had actually been caught in the side wall of the escalator, we would cast the defendant in damages. However, the proper determination in our opinion, based on all of the facts presented in the instant case, leads to the conclusion that someone stepped on plaintiff’s heel — plaintiff reacted — and perhaps in some fashion the alleged damages to the toe and front sole of the shoe resulted from contact with the escalator.
In Marquez, the Court continued:
“* * * We find that the escalator which caused damage was in the custody of City Stores; that the escalator was defective; and that the injury occurred through this defect. Therefore, we hold City Stores liable for maintaining a defective escalator and in not preventing its vice from causing injury.” 371 So.2d at 814.
We find that Mrs. Buckel’s ankle suffered an injury as a result of a violent “attack” on the heel of her shoe while riding the escalator which was in custody of Maison Blanche. Accordingly we find that plaintiff has failed to sustain her burden of proving that the injury was caused by her shoe being jammed or caught in the escala *1390 tor or by any other contact with the escalator other than riding bn it. Emphatically, under Marquez, had plaintiff established by the evidence that her shoe was caught by the escalator and the injury resulted, we would find Maison Blanche liable for maintaining a defective escalator and in not preventing its vice from causing injury. The plaintiff need not prove the occurrence of some “unusual incident” or “malfunction” in the escalator since we agree that Marquez holds that an injury occasioned by contact with an escalator would not happen were the escalator not defective. However, we do not interpret Marquez to mean that the custodian of an escalator is responsible in damages to a rider where a claimant fails to prove that the escalator caused or was mechanically involved in an accident on said escalator.
For the reasons assigned the judgment appealed from is affirmed.

AFFIRMED.